# United States District Court

# Eastern District Of New York

12-CV-0055
(Townes, D.J.)

JOSEPH GENTILE,

*Petitioner,*

against

ROLLAND LARKIN, Supt.,

*Respondent.*

AMICUS CURIAE BRIEF IN SUPPORT OF

## PETITION FOR HABEAS CORPUS RELIEF

### 28 U.S.C. § 2254

RICHARD A. BROWN
District Attorney
Queens County
*Attorney for Respondent*
125-01 Queens Boulevard
Kew Gardens, New York  11415
(718) 286-5862

DANIEL BRESNAHAN
  Assistant District Attorney
    Of Counsel

JOSEPH J. GENTILE, ESQ. former
*Attorney for Defendant Petitioner.*
21-41 46th Street
Long Island City, New York 11105
(718) 726-1252

Supreme Court, Queens County,    Indictment #2642/05

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

JOSEPH GENTILE,

                Petitioner,

    -against-

ROLLAND LARKIN, Superintendent,
Eastern N.Y. Correctional Facility,

                Respondent.

-----------------------------------x

AMICUS CURAE BRIEF
IN SUPPORT OF PETITION
FOR A WRIT OF
HABEAS CORPUS
12-CV-0055
(Townes, D.J.)

TO THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK,
RESPECTFULLY:

      I, JOSEPH J. GENTILE, the father of the Petitioner herein and a licensed New York Attorney at Law, wish to say that I and my son are very grateful for the privilege that this Honorable Court has extended to me in granting the permission to file my Amicus Curiae Brief.

      In order to properly inform this Court, and the Respondent, I am submitting the following statement of facts and discussion herein as an Attorney's Affirmation:

STATE OF NEW YORK) :
COUNTY OF QUEENS ) :ss.:

      I, JOSEPH J. GENTILE, an attorney at law, duly licensed to practice in the courts of the State of New York, and in this Court, being mindful of the penalties of perjury, hereby affirm that the following facts and discussions are true to my own knowledge, except for those matters that are alleged upon information

1.

*Page 1*

and belief, and as to those matters, I believe them to be true.

2. The <u>Factual and Legal Background</u> set forth herein is copied directly from the 2nd page that is part of each of two separate Affirmations made by Assistant District Attorney Daniel Bresnahan, in the Appeal in Appellate Division #2007-00652 had herein, which are dated and signed on August 27, 2009 and on January 14, 2010, respectively, and are completely indentical.

3. These factual statements made by Mr. Bresnahan, are being used, not only for their brevity, but mainly to illustrate his dishonesty in setting forth to the appellate court that (a) "Defendant then pulled Ms. Persad into an adjacent laundry room, <u>removed her clothes</u>..." (underlining added)(whereas Ms. Persad's trial testimony (64, lines 15-17), was that she was wearing a pair of jeans and a blouse and stuff above her waist) and (b) <u>"DNA tests performed on blood and semen found on the pants that Ms. Persad was wearing when she was raped revealed that the blood was that of Ms. Persad and the semen was that of defendant."</u> (underlining added)(whereas the DNA expert, Mark Desire, who was the prosecutor's own witness, testified that with the DNA testing, he was unable to tell whether Ms. Persad's DNA traces came from skin cells or from the blood.)

4. I have annexed hereto the first and last pages of ADA Daniel Bresnahan's said Affirmations of 8/27/09 and 1/14/10, with the identical Factual and Legal Background page inserted between so that the Federal Court may assess Mr. Bresnahan's soundness and veracity, in his giving of adverse proof against my son.

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION:  SECOND DEPARTMENT
-------------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,      :          Return Date:
                                                                            August 28, 2009

                                                                     :

                                                                            AFFIRMATION IN
                                                                     :      RESPONSE
                                                                            AND  OPPOSITION

          -against-                                             :

                                                                     :

JOSEPH GENTILE,                                              Queens County
                                                                     :      Indictment Number
                                                                            2642/05

                                                                     :

                    Defendant.                                 A.D. # 2007-00652
-------------------------------------------------------------------x

          DANIEL BRESNAHAN, an attorney duly admitted to practice in the State of

New York, affirms the following to be true under the penalties of perjury:

          1.          I am an Assistant District Attorney, of counsel to Richard A. Brown, the

District Attorney of Queens County.  I am submitting this affirmation and accompanying

memorandum of law in response to defendant's *pro se* motion, dated July 16, 2009, to allow

Joseph J. Gentile Sr., Esq., to become his attorney of record in this appeal and for an

enlargement of time to file a reply brief, and in opposition to defendant's motion to file

multiple reply briefs and for permission to have Joseph J. Gentile, Sr., Esq., orally argue

defendant's appeal.  I make the statements in this affirmation upon information and belief,

and upon my review of the records and files of the Queens County District Attorney's Office.

*Page 3*

## FACTUAL AND LEGAL BACKGROUND

2.      The evidence established that on July 29, 2005, defendant and a cohort, Peter Dipiano, drove in a cab to the Bronx home of Vashti Persad, who had just broken off a romantic relationship with defendant.   Defendant, with a .45 caliber handgun in his waistband visible to Ms. Persad, grabbed Ms. Persad by her wrist as she stood in front of her house and pulled her into the cab.  Ms. Persad observed Dipiano sitting in the back-seat of the cab, holding a shotgun covered by a jacket. Defendant and Dipiano then took Ms. Persad to defendant's house at 21-60 46th Street, Queens County.  Defendant brought Ms. Persad into the kitchen of the house, pointed the handgun at her, slapped her in the face, and accused her of having sexual relations with her neighbors. Defendant then pulled Ms. Persad into an adjacent laundry room, removed her clothes, and forcibly inserted his penis into her vagina. Defendant also burned Ms. Persad's wrist several times with a cigarette.  After Ms. Persad reported the rape, the police recovered the shotgun Dipiano had been holding from defendant's house and, upon arrest, defendant admitted to throwing a gun into a river.  DNA tests performed on blood and semen found on the pants that Ms. Persad was wearing when she was raped revealed that the blood was that of Ms. Persad and the semen was that of defendant.

3.      For these acts, defendant was charged with Rape in the First Degree (Penal Law § 130.35 [1]), Kidnapping in the Second Degree (Penal Law § 130.20), Assault in the Second Degree (Penal Law § 120.05[2]), Unlawful Imprisonment in the Second

2

*Page 4*

WHEREFORE, the People rely on this Court's discretion regarding defendant's motion to have Joseph J. Gentile, Sr., Esq, named as defendant's attorney of record and for an enlargement of time to submit a reply brief, and the Court should summarily deny defendant's motion to submit multiple reply briefs and for permission for Joseph J. Gentile, Sr., Esq, to orally argue defendant's appeal.


Dated: Kew Gardens, New York
       August 27, 2009


                                                      _____
                                                      DANIEL BRESNAHAN
                                                    Assistant District Attorney
                                                    (718) 286-7046


To:    Joseph Gentile
        07-A-0255
        Eastern Correctional Facility
        P.O. Box 338
        Napanoch, New York 12458


10

*Page 5*

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION:  SECOND DEPARTMENT
------------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,     :

       :

       :

       :

       :

         -against-                  :

       :

JOSEPH GENTILE,                      :

       :

              Defendant.          :
------------------------------------------------------------------x

Return Date:
January 15, 2010

AFFIRMATION IN
OPPOSITION TO
DEFENDANT'S
SUCCESSIVE MOTION
FOR ENLARGEMENT OF
TIME   TO   FILE   REPLY
BRIEF

Queens County
Indictment Number
2642/05

A.D. # 2007-00652

        DANIEL BRESNAHAN, an attorney duly admitted to practice in the State of

New York, affirms the following to be true under the penalties of perjury:

        1.      I am an Assistant District Attorney, of counsel to Richard A. Brown, the

District Attorney of Queens County.  I am submitting this affirmation in opposition to

defendant's *pro se* motion, dated December 11, 2009, seeking a third enlargement of time

to submit a reply brief. I make the statements in this affirmation upon information and belief,

and upon my review of the records and files of the Queens County District Attorney's Office.

*Page 6*

## FACTUAL AND LEGAL BACKGROUND

2.      The evidence established that on July 29, 2005, defendant and a cohort, Peter Dipiano, drove in a cab to the Bronx home of Vashti Persad, who had just broken off a romantic relationship with defendant.   Defendant, with a .45 caliber handgun in his waistband visible to Ms. Persad, grabbed Ms. Persad by her wrist as she stood in front of her house and pulled her into the cab.  Ms. Persad observed Dipiano sitting in the back-seat of the cab, holding a shotgun covered by a jacket.  Defendant and Dipiano then took Ms. Persad to defendant's house at 21-60 46th Street, Queens County.  Defendant brought Ms. Persad into the kitchen of the house, pointed the handgun at her, slapped her in the face, and accused her of having sexual relations with her neighbors.  Defendant then pulled Ms. Persad into an adjacent laundry room, removed her clothes, and forcibly inserted his penis into her vagina. Defendant also burned Ms. Persad's wrist several times with a cigarette.  After Ms. Persad reported the rape, the police recovered the shotgun Dipiano had been holding from defendant's house and, upon arrest, defendant admitted to throwing a gun into a river.  DNA tests performed on blood and semen found on the pants that Ms. Persad was wearing when she was raped revealed that the blood was that of Ms. Persad and the semen was that of defendant.

3.      For these acts, defendant was charged with Rape in the First Degree (Penal Law § 130.35 [1]), Kidnapping in the Second Degree (Penal Law § 130.20), Assault in the Second Degree (Penal Law § 120.05[2]), Unlawful Imprisonment in the Second

WHEREFORE, for the reasons set forth above, the Court should summarily deny defendant's motion for an enlargement of time.

Dated:  Kew Gardens, New York
        January 14, 2010

_____
DANIEL BRESNAHAN
Assistant District Attorney
(718) 286-7046

To:   Joseph Gentile
      07-A-0255
      Eastern Correctional Facility
      P.O. Box 338
      Napanoch, New York 12458

      Joseph J. Gentile, Sr. Esq.
      21-41 46th Street
      Long Island City, New York  11105

11

*Page 8*

<u>POINT I</u>

A.   THE APPELLATE DIVISION'S DECISION & ORDER
     IS INTRINSICALLY REPUGNANT AND OBJECTIVELY
     UNREASONABLE, AS IT BARS THE APPELLANT'S
     VARIOUS GROUNDS FOR APPEAL AS BEING "UN-
     PRESERVED", BUT THEN REJECTS HIS CLAIM
     THAT "HE WAS DEPRIVED OF THE EFFECTIVE
     ASSISTANCE OF COUNSEL."

B.   THE DECISION & ORDER DOES NOT HOLD THAT ITS
     DICTA, FOLLOWING EACH "UNPRESERVED RULING"
     AMOUNTS TO AN ALTERNATIVE  DECISION" MADE
     ON THE MERITS.

The Appellate Division's "Decision & Order", <u>People v.</u>
<u>Gentile</u>, 73 A.D. 3d 944 (2nd Dept. 2010), that relentlessly
struck down the petitioner's hopes, is very much in agreement
with the remarkable cautionary statement set forth in <u>Cody v.</u>
<u>Henderson</u>, 936 F. 2d 715, 722 (2nd Cir. 1991), "At the appel-
late stage, a defendant has been "stripped of his presumption
of innocence" and is in the position of trying "to upset the
prior determination of guilt." <u>Ross v. Moffitt</u>, 417 U.S. 600,
611 (1974).

This appellate court was unanimous in its vindictive pur-
pose to kick the convicted rapist when he was down, a la <u>Cody v.</u>
<u>Henderson</u> and <u>Ross v. Moffitt</u>, (both supra), even though the
trial record clearly shows that the appellant's ex-girlfriend
testified that she didn't know whether she was burned with his
cigarette first, or raped first, (62); and she also testified
that she was raped with her legs tightly crossed and with her
still-buttoned pants positioned somewhere between her knees and

1.

and her waist. (66,67).

The respondent's supporting <u>Affidavit in Opposition</u> which was sworn to and submitted by Assistant District Attorney, Daniel Bresnahan, on April 19, 2012 (19 pages), contains an accurate summarization of the "Decision & Order", on its pages 15, 16 &17, and shows that the appellate court made very sure to "box in" the sorry "stripped of all rights" petitioner into a "Catch-22" and also into a "you can't get there from here" situation.

The Appellate Division's "Decision & Order" defys all logic when its rulings are taken together, as they first specifically deny all of the appellant's points or grounds for appeal, as "being unpreserved" but at the same time, "...reject the defendant's contention that he was deprived of the effective assistance of counsel."; these conflicting, contradictory conclusions are classic examples of "inconsistency and repugnancy" and thus, "objectively unreasonable."

Just an ordinary reading of the "Decision & Order" and of respondent's <u>Affidavit and Memorandum of Law in Opposition to Petition For a Writ of Habeas Corpus</u> will suffice to prove that the petitioner's trial counsel miserably failed to be effective, and that he even failed opportunities to move for a mistrial.

It is apparent that the appellate court's overburdened legal help failed to spot that although the trial court had agreed with the DNA expert that the DNA testing was inconclusive because Ms. Persad's DNA might have come from skin cells (547),

they somehow failed to consider that the lower court stumbled when it allowed prosecutor Carroll to shout to the jury, the words "SHE BLED", at about the end of his summation.

Then, of course, the defense counsel was "asleep at the switch", as he was when Mr. Carroll told his unparalled bawdy example about a "2-bit whore" to Dr. Lewittes, so that the jury could hear, and become more biased against the petitioner.

Page 11

## POINT II

### THE TRIAL PROSECUTOR'S ATROCIOUS MISCONDUCT DURING THE TRIAL, AND ADA DANIEL BRESNAHAN'S PERJURIOUS WORK DURING THE APPEAL, SEVERALLY SERVED TO DENY BOTH A FAIR TRIAL AND A FAIR APPEAL TO THE PETITIONER.

At the trial, the prosecutor, John Carroll, Esq., created his unholy BIG LIE, to the effect that he warranted that Vashti Persad had sustained vaginal bleeding as the result of being forced into coitus with the defendant, and the totally unprincipled Mr. Carroll kept utilizing this scam to include his falsely describing his self-asserted "bloodstains", as being present on the crotch of Ms. Persad's blue jeans.

Both Mr. Carroll and Mr. Bresnahan had been aware from the start, that Ms. Persad had never given any testimony or reason to believe that she had been caused to bleed or that there were any bloodstains on her blue jeans or elsewhere, but both kept up with the BIG LIE concerning "bloodstains", in fact, at this very time, the Memorandum of Law herein contains their "bloodstains" fiction, on pages 26, 44 & 91!

At the trial, ADA Carroll even had the chutzpah to cross-examine the petitioner about "blood on the jeans", when he knew from the DNA expert's testimony that there wasn't any, but in order to put the defendant on the spot, before the court and the jury, he demanded, "How did the blood get in Vashti Persad's blue jeans, Mr. Gentile?" (699)

This very entrapping question led to the petitioner's be-

ing tricked into believing that bloodstains had actually been determined by the DNA testing, and into hazarding his guess to the effect that the alleged stains might have come from pregnancy-spotting, as he had believed that she had been pregnant at the time she had left him.

ADA Carroll jumped on this opportunity to contemptuously ridicule the defendant by sarcastically shouting, "...she is pregnant with your child, she fucks you in the laundry room, she tried to shake you down...." (698, 699)and, during summation he told the jury, "all of a sudden she is pregnant.", "this is the first time during the defendant's testimony that I am hearing of this pregnancy!" Mr. Carroll lied, as he knew of V.P.'s possible pregnancy from differnt sources, but wanted to upset the defendant-witness into yielding to his pressure.

Also during summation, he said, "you have not only semen but blood that is Vashi Persad's blood mixed with that semen in those blue jeans." (738), and, "He has got no explanation for the blood in her blue jeans." (747).

Mr. Carroll's biggest deliberate falsehood to the jury was undoubtedly, when he quoted Ms. Persad as saying, "...he was ramming it into me, it hurt....", and then his finishing it off, by shouting, "SHE BLED."

As the trial transcript will show, John Carroll, Esq. had the incredible gall to have the jury inspect the blue jeans, even though the DNA expert agreed with the trial justice, that the DNA testing was unable to tell whether the stains on the

jeans

came from skin cells or from the blood. (547).

On May 21, 2012, over a year ago, I, Joseph J. Gentile, the petitioner's father, telephoned Assistant District Attorney Daniel Brenahan, in order to obtain his consent to review a part of a proposed appeal brief that I had prepared to help my son in his appeal to the Appellate Division, but which he never adopted. I told him that it was my 90th birthday, and that my proposed brief portion had been prepared in order to refute Mr. Carroll's claims that had been made during the trial, which had been to the effect that Vashti Persad had been caused to bleed due to the alleged "rape", and also to refute Mr. Carroll's allegation that blood DNA had been detected on her blue jeans.

Mr. Bresnahan was very gracious and agreed that I could send a copy to him.

I mentioned to him that I had become determined to call him because of the foreward to a book, "Anatomy of Injustice", written by Raymond Bonner (2010), which has to do with "a prosecutor's duty" and because it was my birthday, and he gave his congratulations.

I had very naively believed and hoped, that perhaps when Mr. Bresnahan and the Queens District Attorney's Office were able to realize, by checking the trial transcript, that there had been no "bleeding" and no DNA findings of any blood stains, they might feel morally and dutifully bound to set about to un-
due the injustice to my son, who really was convicted by John

Page 14

Carroll's misleading the jury about Vashti Persad having been caused to bleed as a result of the alleged rape.

However, I have not heard from Mr. Bresnahan nor from the Queens District Attorney's Office, since my telephone call, and the sending of my letter and proposed part of brief, about <u>15 months ago.</u>

It may be that the Queens County District Attorney's office's legal personnel do not believe that "The prosecutor's duty is not that it shall win a case, but that justice shall be done...", as pronounced by Justice Sutherland, in <u>Berger v. United States,</u> 295 U.S. 78 (as set forth in the foreword to "Anatomy of Injustice"), just as certain appeal courts that have "in the interest of justice" power, do not always consider the plight of convicted appellants (because they have been "stripped of the presumption of innocence"; however, the wrongly convicted can be thankful that they may be able "to upset the prior determination of guilt" with help from the Untited States district Courts, and their Writs!

My letter, written on my birthday, May 21, 2012, that was sent to Mr. Bresnahan, together with the foreword to "Anatomy of Injustice", and that part of brief refuting Mr. Carroll's fake "SHE BLED" summation argument, are annexed hereto and made a part of this POINT.



**JOSEPH JOHN GENTILE**

**ATTY REG # 1001148**

HT 5  10        EYE Brown
DOB 5/21/1922

ID Expires    **05/21/12**



NEW YORK STATE
Unified Court System
**ATTORNEY SECURE PASS**    Chief Administrative Judge

JOSEPH J. GENTILE
Attorney at Law
21-41  46th Street
Long Island City, N.Y. 11105

May 21, 2012

Re: Joseph Gentile (Jr.) v.
Superintedent Rolland
Larkin

12-CV-0055(SLT)

District Attorney, Queens County
125-01 Queens Boulevard
Kew Gardens, New York 11415-1568

Attention: Daniel Bresnahan, Esq.

Dear Mr. Bresnahan:

Thanks Very Much with your patience with me.

I have enclosed a copy of the <u>unutilized</u> argument that
I had proposed for my son's appeal brief (showing that there
wasn't any bleeding from the claimed "rape" and clearly no ac-
tual proof of blood on Ms. Persad's pants).

Also enclosed, copies of the foreword to Raymond Bonner's
book, "Anatomy of Injustice" (2012), which encouraged me herein.

In various affirmations made by John Carroll, Esq. and
yourself, it was stated: "DNA tests performed on blood and seman
found on the pants that Ms. Persad was wearing when she was raped
revealed that the blood was that of Ms. Persad and the semen was
that of defendant.", BUT the record shows that it was the Court's
conclusion that "In other words, you are unable to tell whether
it came from skin cells or from the blood; is that correct?"
(which was answered, "That's correct."

Apparently, the Court, the prosecutor and the defense
counsel, all promptly forgot about that this had been the Court's
conclusion.

I hope that my unpublished argument can help my hare-
brained son in any way.

Very truly yours,

*Joseph J Gentile*
Joseph J. Gentile

*Page 16*

THE PROSECUTOR, ADA JOHN CARROLL, SHOULD BE
CENSURED, FOR PERPETUATING THE FALSE CLAIMS
THAT, (A), VASHTI PERSAD WAS CAUSED TO BLEED
AS THE RESULT OF THE ALLEGED RAPE, (B) THAT
HER ALLEGED FRESH BLOOD BECAME MIXED WITH
THE DEFENDANT'S SPERM, AND (C) THAT THE BLUE
JEANS CONTAINED FRESH BLOOD STAINS BESIDES
OLD-LOOKING STAINS.

A.  <u>There was absolutely no testimony from Vashti Persad
that she had been caused to bleed as a result of
the alleged forced sexual encounter with her former
boyfriend, the defendant, Joseph Gentile.</u>

At no time during her testimony, did Vashti Persad give any
evidence that she had sustained vaginal bleeding as the result of
her alleged forced encounter with the defendant.  She did not tell
her mother or any of her family about any such bleeding, and she
never said anything about it to the police investigators or the
District Attorney's office, <u>because if she had, she would have
been rushed to a hospital, for both medical attention and for a
hospital report, both of which never occurred.</u>

However, Vashti Persad did testify, <u>under direct examination</u>,
that after she allegedly was raped, that the defendant "<u>Just stayed
there and told me to go to the bathroom and clean myself up.</u>"  The
prosecutor asked: Q. "What did you do?"  A, "So I did." (345)  It
should be obvious that if she had been bleeding vaginally, she
would have remarked about it at this time of testifying in court
about cleaning herself up at the defendant's request.  She still
did not remark about any vaginal bleeding when she was cross-ex-
amined by the defense, to wit:  Q.  "Then he finishes and tells
you to clean yourself up, get dressed, et cetera?"  A.  "yes".

<em>Page 17</em>

Q.  "And you go into the bathroom, right?"  A.  "Yes."  (388-389)

    B.  <u>The testimony of Mark Desire, the People's DNA Expert,
        definitely discloses that there was absolutely no
        actual proof for ADA Carroll's false contention in a
        statement during summation, "You have not only semen,
        but blood that is Vashti Persad's blood mixed with
        that semen in those blue jeans."</u> (738)

    In response to the prosecutor's direct question, "Was a DNA
profile generated from the blood in those blue jeans?", the expert
witness, Mark Desire, answered, "The procedure that's performed
for testing for the presence of blood and semen, you are unable
to distinguish if the DNA came from possible vaginal excretion
cells or semen stains.  We generally see a mixture of semen and
vaginal cells, which are empty cells.  In this particular case,
DNA was done, profiles generated for both the blood and the semen
at the same time, so the DNA results in this case, the DNA pro-
cedure for examining for the presence of blood DNA is the same
procedure that we look for semen cells can be used, so the profiles
that were generated would be for blood and semen at the same time."
(547).  Then the Court questioned him:

    THE COURT:  <u>"In other words, you are unable to tell whether
                it came from skin cells or from the blood;
                is that correct?"</u>

    THE WITNESS:  <u>"That's correct."</u>   (547)

    Vashti testified that she was not wearing any panties under
her blue jeans (384-385), and it appears more than likely that she
may have deposited menstrual blood stains in her soiled blue jeans
much prior to the time of the alleged forced sexual encounter.

*Page 18*

Mark Desire emphatically testified, "DNA technique cannot tell the age of a stain, DNA will last a very long time in blood or semen stain if conditions are right." (555)

It must be remembered that Vashti Persad and the defendant had lived together and had sex together for about a 4-month so-journ, and that it is most probable that stains of his semen and the stains of her menstrual blood might well have been embedded in the coarse denim fabric of her blue jeans, especially as it was her testimony that she did not wear panties underneath. (384-385). Her testimony that she was not wearing panties strongly indicates a lack of good personal hygiene and indifferent and careless laundering on her part.

Regardless of Mr. Desire's testimony that "And there is no way of telling how long that a stain had been there." (556) and "there was no way of telling through DNA profiling how old a stain is." Mr. Carroll dishonestly and unethically cross-exam-ined the defendant, by asking, "How did the blood get in Vashti Persad's blue jeans, Mr. Gentile" (699), and during his summa-tion, "You have not only semen, but blood that is vashti Persad's blood mixed with that semen in those blue jeans." (738), and, "He has got no explanation for the blood in her blue jeans." (747)

C. Although Vashti Persad testified that she had cleaned herself up in the bathroom, without ever remarking as she could have, that she had been caused to bleed or that there was any fresh blood, ADA Carroll per-sisted in using the BIG LIE during his summation, and succeeded in hoodwinking the Court and jury into believing that the defendant was guilty of a vicious rape, rather than a consensual making of love with his temporarily-estranged girlfriend.

*Page 19*

As part of his summation, Mr. Carroll said to the attending Court Officer, "I need the biggest packet."  The Court Officer handed the same to the prosecutor. (757)  Mr. Carroll then spoke to the jury:

> MR. CARROLL:  "There is semen mixed (757) with her blood in her jeans.  Stains 1-A and 1-B (indicating), and here they are.  This is 1-A, the large stain going down the seam.  This is 1-B, and you'll be able to - - they are black and white, I apologize, but you will be able to go back and you will be able to look at them.  They are dark stains.  I thought she was pregnant.  If she is pregnant, where is that blood coming from?  He hurt her.  She said it.  What did it feel like when he had you over that washing machine?  He was ramming it in me, it hurt, it was painful.  <u>SHE BLED</u> (758)  And he has no answer for that."

At a new trial, it will be certain that THE PEOPLE, and especially Mr. Carroll, will not again be able to employ <u>THE BIG LIE</u> that there was <u>fresh blood</u> involved in the falsely alleged rape, by showing the jury obviously old, incrusted stains on a dirty, unwashed pair of blue jeans, as evidence of same.

Although Justice Buchter seemed to understand that there <u>was no actual proof</u> that the DNA samples showed blood rather than the vaginal secretions and skin cells <u>that were probably the source of the DNA attributed to Vashti Persad,</u> he failed to com- prehend the significance of the matter, especially with regard to the prosecutor's false argument that there had been fresh blood, even through the only eye witness, Vashti Persad, <u>never said that she had bled,</u> or that there had been <u>fresh blood.</u>

The trial court should have gathered from the DNA expert's

Page 20

detailed testimony, that the DNA that was recovered by the DNA
testing, could not have been from "fresh blood", as there wasn't
any evidence of any, and that it was probably not from old blood,
but that it was likely from her body cells and secretions, which
were rubbed off by the blue jean denim material, especially since
Vashti Persad had clearly testified that she had cleaned herself
off at the defendant's request, and that she had not been wearing
panties under her blue jeans.

Page 21

[The prosecutor's duty] is not that it shall win a case, but that justice shall be done. . . . He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

—JUSTICE GEORGE SUTHERLAND,
BERGER V. UNITED STATES, 1935

Law enforcement officers have the obligation to convict the guilty and to make sure they do not convict the innocent. They must be dedicated to making the criminal trial a procedure for the ascertainment of the true facts surrounding the commission of the crime. To this extent, our so-called adversary system is not adversary at all; nor should it be. But defense counsel has no comparable obligation to ascertain or present the truth. Our system assigns him a different mission. He must be and is interested in preventing the conviction of the innocent, but, absent a voluntary plea of guilty, we also insist that he defend his client whether he is innocent or guilty.

—JUSTICE BYRON WHITE,
UNITED STATES V. WADE, 1967

# Anatomy of Injustice

## A MURDER CASE GONE WRONG

———

# RAYMOND BONNER

Page 22



ALFRED A. KNOPF · NEW YORK

2012

<u>CONCLUSION</u>

For the reasons set forth herein, this Court should grant the petitioner's application for a Writ of Habeas Corpus.

Respectfully submitted,

*Joseph J. Gentile*

August 20 , 2013                    JOSEPH J. GENTILE

Page 23

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

JOSEPH GENTILE,

                    Petitioner,                    AFFIDAVIT OF SERVICE
                                                   BY UNITED STATES POSTAL
      -against-                                          SERVICE
                                                      12-CV-0055
ROLLAND LARKIN, Superintendent,
Eastern N.Y. Correctional Facility,                  (Townes, D.J.)

                    Respondent.
------------------------------------x

STATE OF NEW YORK   )
                       ss.:
COUNTY OF QUEENS    )
```

_____ MARY ANN GENTILE _____, being duly sworn, deposes and says

that deponent is not a party to the action, is over eighteen (18)

years of age, and resides at 21-41 46th Street, Long Island City,

New York 11105.

That on August 20th, 2013, deponent served the within

AMICUS CURIAE BRIEF IN SUPPORT OF PETITION FOR A WRIT OF HABEAS

CORPUS PREPARED BY JOSEPH J. GENTILE, ESQ., upon the following

named recipients:

Honorable Sandra L. Townes            District Attorney,
United States District Court Judge    Queens County
Eastern District of New York          Att: D. Bresnahan, Esq.
225 Cadman Plaza East                 125-01 Queens Boulevard
Brooklyn, New York 11201              Kew Gardens, N.Y. 11415

Joseph Gentile #07A0255
Green Haven Correctional Facility
Stormville, New York 12582-4000

By mailing a true and complete copy of same in a postage

pre-paid envelope, and depositing same in a post office or official

depository of the United States Postal Service within New York State.

Sworn to on August 20th, 2013

_Joseph J. Gentile_

_Mary Ann Gentile_
Mary Ann Gentile

JOSEPH J. GENTILE
NOTARY PUBLIC, State of New York
No. 02GE1403130
Qualified in Queens County
Commission Expires June 30, 20 15