UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JOSEPH GENTILE,

                Petitioner,

     – against –                             **MEMORANDUM AND ORDER**

ROLLAND LARKIN, Superintendent,               12-CV-55 (SLT)
Eastern N.Y. Correctional Facility,

                Respondent.
----------------------------------------------------------------x

**TOWNES, United States District Judge:**

      Petitioner Joseph Gentile, Jr., a New York State inmate, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking to challenge his 2007 conviction for rape in the first degree, assault in the second degree, and other lesser offenses. There are currently several motions pending before the Court. This Memorandum and Order addresses two of those motions: (1) a motion for an order granting petitioner discovery, a "habeas corpus hearing," and assignment of counsel, and (2) a motion for an order granting habeas corpus relief on the ground that respondents destroyed exculpatory evidence. For the reasons set forth below, both motions are denied.

*BACKGROUND*

      Petitioner commenced this action in January 2012 by filing an extraordinarily literate, neatly typed 28-page "Petition for Habeas Corpus Relief" (the "Petition"). The Petition raised four grounds, three of which asserted that Petitioner was denied his Constitutional right to a fair trial.[1] The other ground asserted that Petitioner's guilt had not been proved beyond a reasonable doubt.

---

[1] Specifically, the Petition argued (1) that the trial court violated Petitioner's right to a fair trial by refusing to permit defense counsel to prove that the complainant initially gave police a different version of the incident, (2) that the People engaged in prosecutorial misconduct, and (3) that the trial court erroneously admitted certain evidence.

On July 15, 2012, approximately three months after the District Attorney of Queens County filed an Affidavit and Memorandum of Law in Opposition to the Petition, Petitioner's father—a retired attorney—wrote a letter to this Court requesting permission "to file an amicus curiae brief, in order to assist [his] incarcerated son." Letter to Hon. Sandra L. Townes from Joseph J. Gentile dated July 15, 2012, p. 1 (brackets added). In an endorsed order dated May 3, 2013, the Court granted that request, noting that Petitioner had consented to have his father assist him. The amicus curiae brief (hereafter, the "Amicus Brief") was filed in late August 2013.

Thereafter, Petitioner requested that this Court "with-hold [*sic*] any decision on this case in order to allow [him] to submit evidence of [his] innocence ...." Letter to Hon. Sandra L. Townes from Joseph Gentile (Jr.) dated Jan. 15, 2014 (brackets added) (docketed as Document 31). Interpreting this letter as a request to stay proceedings to enable Petitioner to file a motion pursuant to N.Y. C.P.L. 440.10 in state court, this Court granted that request. However, on January 22, 2014, Petitioner sent a motion to this Court (docketed on January 29, 2104, as Document 30), seeking discovery, an evidentiary hearing, and counsel to represent him at that hearing (hereafter, the "First Motion"). Since the First Motion essentially seeks three types of relief, this Court will describe the three parts of the motion separately.

*The Discovery Requests Contained in First Motion*

The first portion of the First Motion seeks discovery pursuant to Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts ("Rule 6(a)"). The items sought fall into six categories. First, Petitioner seeks duplicate copies of documents relating to this case which were damaged or destroyed by a flood in his prison cell. Second, Petitioner seeks transcripts and/or recordings of certain telephone conversations between Petitioner and the

complainant which took place in April, May and July 2006, when Petitioner was incarcerated at Rikers Island. With respect to these items,"it's Petitioner's contention[ ] that said calls ... contain exculpatory information in that ... [complainant] acknowledged that Petitioner did not rape or burn her on the wrist with a cigarette." Affidavit of Joseph Gentile (Jr.) in Support of First Motion ("First Gentile Aff."), pp. 2-3 (brackets added, emphasis omitted).

Third, Petitioner seeks a copy of the complainant's phone records for the period between July 29, 2005, and July 2007. He contends that these records will demonstrate that the complainant called Petitioner's parents, his aunt, one of his friends and a co-worker, "demanding money in exchange for dropping the false criminal charges against Petitioner," and kept in "constant contact" with an officer from the 114th Precinct. *Id.*, pp. 3-4. Fourth, Petitioner seeks production of the blue jeans which the complainant was wearing at the time of the incident in order to do forensic testing on blood stains on those pants.

Fifth, Petitioner seeks records of interviews he had with representatives of the Drug Enforcement Administration (the "DEA") and the Internal Affairs Bureau (the "IAB") of the New York Police Department's ("NYPD") in June 2008, after he was convicted. According to Petitioner, the DEA was investigating one Phil Caruso, the Chief Financial Officer of Patriot Records, a multi-million dollar enterprise founded by Petitioner. Petitioner told the DEA agents that he was aware that Caruso had embezzled $200,000 from Patriot Records in March 2005, but did not fire him because Caruso was "involved with Organized Crime." *Id.*, pp. 4-5. Instead, Petitioner went to the 114th Precinct, "seeking to hire off duty Police Officers as personal security." *Id.*, p. 5.

During a subsequent conversation with Sergeant Scanlon of the IAB, Petitioner learned that the complainant's uncle worked at the NYPD's 106th Precinct and had complained to the IAB about the 114th Precinct's refusal to charge Petitioner with the rape and assault of the complainant. In response to that complaint, the IAB interviewed all of the officers who were present at the 114th Precinct when the complainant came to the Precinct to file her complaint against Petitioner. Those officers allegedly told the IAB investigators that the complainant did not have any burns, bruises or other marks that would substantiate her allegations. However, the IAB filed a report recommending that the 114th Precinct file a felony complaint against Petitioner. Petitioner nonetheless contends that the IAB reports "will further demonstrate that Petitioner is Legally/Factually Innocent ...." *Id*., p. 6.

Sixth, Petitioner seeks copies of his own bank records for the period between January 2003-2004. According to Petitioner, these records will establish that Petitioner had access to millions of dollars and "will further highlight the false criminal charges and reveal [the complainant's] access to a windfall of cash in exchange for dropping said charges upon full payment." *Id*., p. 6 (brackets added, emphasis omitted).

*The Hearing Requested in First Motion*

The second portion of the First Motion requests a hearing at which Petitioner can "demonstrate" that his trial attorney provided ineffective assistance of counsel. *Id*., p. 6. Petitioner seeks to establish ineffective assistance of counsel by proving that his attorney failed to obtain many of the items of evidence which Petitioner seeks in the first portion of the First Motion. Specifically, Petitioner alleges that counsel was ineffective in failing (1) to seek forensic testing of the blue jeans; (2) to "obtain copies of ... Phone Calls/Records from Rikers Island" in which the complainant acknowledged that Petitioner was innocent and demanded

4

money in exchange for dropping the charges; (3) to call as a witness at trial the 114th Precinct officer who prepared the complaint report, who could allegedly testify that the complainant failed to allege that she was kidnaped, raped or burned; (4) to use at trial an "Affidavit of Withdrawal," in which the complainant stated that all charges against Petitioner should be dropped; (5) to call Petitioner's parents, aunt and the friend whom the complainant allegedly telephoned to demand money in exchange for dropping the charges; and (6) to make objections to the prosecutor's misconduct during trial. *Id*., pp. 6-7. In addition, Petitioner alleges that his attorney "created a conflict of interest by his communication with ... Caruso," and made a tasteless remark during summation which "clearly inflamed the jury." *Id*., p. 8.

***The Request for Counsel Contained in the First Motion***

The last portion of the First Motion seeks "assignment of counsel." *Id*. Petitioner principally seeks an attorney to represent him at the hearing. However, Petitioner also "believes that with the assignment of counsel, Petitioner will be able to demonstrate that he is both Legally/Factually Innocent of said crimes." *Id*.

In support of the First Motion, Petitioner attaches as Exhibit A a motion pursuant to N.Y C.P.L. § 440.30 (1-a), which Petitioner apparently filed with the state court trial judge in late October 2013. That motion seeks an order granting "DNA/ Forensic Testing" of the blue jeans. That motion alleges, *inter alia*, that Petitioner was deprived of effective assistance of counsel because his attorney failed to seek the forensic testing prior to trial, and that the testing would have proved exculpatory. First Motion, Ex. A, p. 8. However, Petitioner concedes that the semen on the jeans was his. *Id*., p. 1. Rather, he alleges that the blood found on the jeans was "spotting" due to the complainant's pregnancy, not evidence of forcible compulsion. *Id*.

*The Second Motion*

Although the First Motion does not state whether the trial judge has yet ruled on his section 440 motion, a subsequent motion suggests that the 440 motion is now moot. In a motion dated February 21, 2012, and docketed on February 26, 2014, as Document 34 (hereafter, the "Second Motion"), Petitioner requests that this Court grant habeas corpus relief on the ground that the prosecution destroyed the jeans. Petitioner does not contend that his 440 motion prompted the prosecution to destroy this evidence. Instead, Petitioner alleges that sometime after he filed the First Motion, he came across a response to a previous 440.10 motion which the People filed in 2009, which indicated that the jeans were destroyed shortly after trial. Affirmation of Joseph Gentile (Jr.) in Support of Second Motion, ¶ 4.

The Second Motion asserts that the jeans were *Brady* material because analysis of the blood would have established that it was caused by "spotting." According to Petitioner, the blood of pregnant women contains a hormone—progesterone—which can be detected using forensic tests. *Id.*, ¶ 2(e). The Second Motion asserts that proof the blood emanated from the complainant's vagina would not only have been exculpatory, but would have established his actual innocence. *Id.*, ¶ 3. Citing to New York State cases for the proposition that the prosecution has a duty to preserve evidence until all appeals have been exhausted, Petitioner reasons that the prosecution's destruction of the allegedly exculpatory evidence constitutes another ground for granting habeas relief.

## *DISCUSSION*

A. *The Discovery Requests*

Although habeas proceedings are "civil in nature," *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011), the "broad discovery provisions" of the Federal Rules of Civil

Procedure do not apply to habeas proceedings. *Harris v. Nelson*, 394 U.S. 286, 295 (1969). Thus, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see also Drake v. Portuondo*, 321 F.3d 338, 346 (2d Cir. 2003). Rather, Rule 6(a) provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."

"A petitioner 'bears a heavy burden in establishing a right to discovery.'" *Pizzuti v. United States*, 809 F. Supp. 2d 164, 176 (S.D.N.Y. 2011) (quoting *Renis v. Thomas*, No. 02 Civ. 9256 (DAB)(RLE), 2003 WL 22358799, at *2 (S.D.N.Y. Oct. 16, 2003)). Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief ...." *Bracy*, 520 U.S. at 908-09 (first set of ellipses in original) (quoting *Harris*, 394 U.S. at 300). However, "Rule 6 does not license a petitioner to engage in a 'fishing expedition' by seeking documents 'merely to determine whether the requested items contain any grounds that might support his petition, and not because the documents actually advance his claims of error.'" *Ruine v. Walsh*, No. 00 Civ. 3798 (RWS), 2005 WL 1668855, at *6 (S.D.N.Y. July 14, 2005) (quoting *Charles v. Artuz*, 21 F. Supp. 2d 168, 169 (E.D.N.Y.1998)).

Petitioner has not met the heavy burden of establishing "good cause" for permitting the discovery requested. None of the discovery sought is relevant to the four grounds for habeas corpus relief which are alleged in the Petition. Rather, most of the evidence sought is the very evidence which Petitioner's counsel allegedly failed to obtain and use at trial.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-pronged test for deciding ineffective assistance claims. To satisfy the first

prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. Specifically, "[a] convicted defendant ... must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690 (ellipsis added).

In the First Motion, Petitioner identifies several different ways in which his trial counsel's representation fell below an objective standard of reasonableness. Petitioner alleges, *inter alia*, that trial counsel was ineffective in failing (1) to seek forensic testing of the blue jeans; (2) to "obtain copies of ... Phone Calls/Records from Rikers Island" in which the complainant acknowledged that Petitioner was innocent and demanded money in exchange for dropping the charges; (3) to call as a witness at trial the 114th Precinct officer who prepared the complaint report, who could allegedly testify that the complainant failed to allege that she was kidnaped, raped or burned; and (4) to call Petitioner's parents, aunt and the friend whom the complainant called to demand money in exchange for dropping the charges. First Gentile Aff., pp. 6-7.

To satisfy the second prong, a defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Supreme Court defines "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Id*. Further, "[t]he level of prejudice the defendant need demonstrate lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.'" *Linstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 693).

The discovery which Petitioner seeks in the First Motion might be helpful in establishing the second prong. First, Petitioner seeks transcripts and/or recordings of the telephone

conversations between Petitioner and the complainant which took place when Petitioner was incarcerated at Rikers Island. First Gentile Aff., pp. 2-3. Second, petitioner seeks a copy of the complainant's phone records, contending that these records will help him substantiate his claim that the complainant called Petitioner's parents, his aunt, and one of his friends, "demanding money in exchange for dropping the false criminal charges against Petitioner." *Id.*, p. 3. Third, Petitioner seeks production of the blue jeans in order to do forensic testing on the blood stains on those pants. Fourth, Petitioner seeks records of interviews he had with Sergeant Scanlon of the IAB in order to establish that the complainant exhibited no injuries at the time she filed her complaint at the 114th Precinct.

However, the ineffective assistance claim is not one of the four grounds for habeas relief alleged in the Petition. The Petition raised four grounds for habeas corpus relief: three asserting that Petitioner was denied his Constitutional right to a fair trial and the fourth asserting that Petitioner's guilt had not been proved beyond and reasonable doubt. The discovery Petitioner now seeks is obviously irrelevant to the reasonable doubt claim, since Petitioner is arguing that his attorney failed to present this evidence at trial. It is equally irrelevant to the fair trial claims, which allege prosecutorial misconduct, evidentiary errors by the trial court, and the trial court's refusal to permit defense counsel to introduce evidence which counsel actually possessed at the time of trial. Since the requested discovery is not relevant to the grounds raised in the Petition, Petitioner's request for discovery is denied. *See Ruine*, 2005 WL 1668855, at *6; *Charles*, 21 F. Supp. 2d at 169.[2]

---

[2]Two of the items which Petitioner seeks are not actually discovery. First, Petitioner seeks duplicate copies of documents relating to this case which were damaged or destroyed by a flood in his cell. This Court cannot assist habeas petitioners in replacing lost, missing or damaged documents. Second, Petitioner seeks copies of his own bank records for the period between January 2003-2004. Petitioner should be able to obtain copies of these records without

## B. *The Request for a Hearing and Representation at that Hearing*

The First Motion also requests a hearing at which Petitioner can "demonstrate" that his trial attorney provided ineffective assistance of counsel. Such a hearing is not available in this Court. A petitioner may, of course, seek habeas relief on the ground that his trial attorney provided ineffective assistance of counsel. However, as explained below, a petitioner must first exhaust that issue in state court before raising the issue before this Court.

A federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court if it concludes that the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). An "adjudication on the merits" is a substantive, rather than a procedural, resolution of a federal claim. *See Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001) (citations omitted). A state court has adjudicated a state petitioner's claim on the merits when it "(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir.2007) (quoting *Sellan*, 261 F.3d 303 at 312). Thus, even when a petitioner asserts "a bona fide federal or constitutional claim cognizable on habeas," *Ortiz v. New York*, No. 12 CV 1116 (RJD), 2013 WL 1346249, at *2 (E.D.N.Y. Mar. 31, 2013), "each argument ... must first have been exhausted through state remedies—that is, presented to the state's highest court." *Harris v. Fischer*, 438 Fed. App'x 11, 13 (2d Cir. 2011) (summary order) (citing *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005)).

---

the assistance of the Court.

In order to exhaust his ineffective assistance claim, Petitioner must file a § 440.10 motion in state Supreme Court, and appeal from that motion if it is denied. Because Petitioner has brought at least one prior § 440.10 motion, that motion may prove unsuccessful. *See* N.Y. C.P.L. § 440.10(3). However, Petitioner must nonetheless attempt to litigate that issue in state court. He cannot seek to litigate the ineffective assistance claim in this Court unless his § 440.10 motion is denied on the merits and he has completely exhausted all appeals from the denial of that motion.

For the reasons stated above, Petitioner's motion for a hearing is, therefore, denied. Moreover, since Petitioner's application for counsel principally seeks representation at that hearing, that application is also denied.

## C. *The Second Motion*

The Second Motion essentially seeks to amend the Petition to add a fifth ground: that the prosecution prematurely destroyed potentially exculpatory physical evidence. In order to raise a new ground, Petitioner will have to move to amend his Petition pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. However, for the reasons discussed above in subsection B, above, it would be futile to a file such a motion before Petitioner has raised and exhausted that issue in state court. Since it is readily apparent from the record that Petitioner has not yet exhausted this claim, this Court declines to construe the Second Motion as a motion to amend the Petition.

If Petitioner wishes to attempt to exhaust the issue raised in the Second Motion, Petitioner may also wish to request that this action be stayed pending exhaustion of that ground. While district courts have discretion to grant such stays, Petitioner is advised that a stay may be granted only if a petitioner can show "good cause" for failing to exhaust all available State remedies

earlier and, even then, only if the unexhausted claims are not "plainly meritless." *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).

## *CONCLUSION*

For the reasons set forth above, Petitioner's motion for an order granting petitioner discovery, assignment of counsel and a "habeas corpus hearing" (docketed as Document 30) and his motion for an order granting habeas corpus relief on the ground that respondents destroyed exculpatory evidence (docketed as Document 34) are both denied.

**SO ORDERED.**

/s/
SANDRA L. TOWNES
United States District Judge

Dated: September 30, 2014
       Brooklyn, New York